IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BEATO OZUNA,

                    Plaintiff,

          v.                              Civil Action No.
                                          9:03-CV-0475 (GLS/DEP)

DR. LESTER WRIGHT, *et al.*,

                    Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

BEATO OZUNA, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER              JAMES J. SEAMAN, ESQ.
Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

          Plaintiff Beato Ozuna, a former New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action asserting the deprivation of his constitutional rights during the period of incarceration.  In his complaint plaintiff claims that the defendants, all of whom are employed in various positions with the New York State Department of Correctional Services ("DOCS"), were deliberately indifferent to his medical needs by their failure to properly treat a fracture in the tip of his pinky finger, and in light of a ten month delay in their arranging for him to undergo surgery for that condition.  As relief, plaintiff seeks recovery of compensatory and punitive damages.

Currently pending before the court is a motion by defendants seeking the entry of summary judgment dismissing plaintiff's complaint on a variety of bases including, *inter alia*, his failure to establish either the existence of a serious medical need or their deliberate indifference to that need, the lack of a showing of personal involvement on the part of several of the defendants in the constitutional violation alleged, and qualified immunity.  For the reasons set forth below I recommend that defendants' motion be granted, and plaintiff's complaint be dismissed in its entirety.

I.     BACKGROUND

At the times relevant to his claims plaintiff was a New York State prison inmate entrusted to the custody of the DOCS and incarcerated

within the Marcy Correctional Facility ("Marcy").  Amended Complaint (Dkt. No. 23) ¶ 2.  On June 11, 2002, while watching a baseball game in the prison yard, plaintiff was struck on the pinky finger of his left hand with a baseball.  *Id.* ¶ 11; Vadlamudi Aff. (Dkt. No. 63) ¶ 6.  Plaintiff reported the accident to medical officials at Marcy during sick call on June 13, 2002. Amended Complaint (Dkt. No. 23) ¶ 12; Vadlamudi Aff. (Dkt. No. 63) ¶ 6; Defendants' Motion Appendix (Dkt. No. 67) Exh. D-1, at 55-56.[1]  Following an examination of his finger by a facility nurse, plaintiff was given Motrin for pain and inflammation, and scheduled for a medical evaluation and x-rays.  Amended Complaint (Dkt. No. 23) ¶ 12; Vadlamudi Aff. (Dkt. No. 63) ¶ 6; AHR at 55-56.

Plaintiff's condition was again evaluated by medical personnel at Marcy on June 14, 2002.  During that medical visit plaintiff's finger was splinted, with some swelling noted, and plaintiff was scheduled for orthopedic consult, with a follow-up scheduled for June 17, 2002. Vadlamudi Aff. (Dkt. No. 63) ¶ 7; AHR at 56.

Based upon their review of medical records and x-rays, prison medical officials at Marcy determined that plaintiff had suffered a fracture

---

[1]      Plaintiff's DOCS ambulatory health record ("AHR"), which is attached as Exhibit D-1 to defendants' motion, will be cited herein as "AHR at ___".

3

of the fifth distal phalanx (finger) with displacement, meaning that the tip of the baby finger of the left hand at the top joint was flexed approximately twenty to thirty degrees.  Vadlamudi Aff. (Dkt. No. 63) ¶ 9.  Medical personnel at the prison regarded the injury as "extremely minor", and determined that plaintiff should be referred for surgery, which was characterized by Dr. Vadlamudi, the prison physician at Marcy, as "elective" and "not medically necessary[.]"[2]  Vadlamudi Aff. (Dkt. No. 63) ¶ 9.

On or about June 19, 2002, plaintiff was seen for an orthopedic consultation at the University Hospital ("SUNY Upstate"), located in Syracuse, New York.  AHR at 54.  Based upon that examination plaintiff was diagnosed as suffering from a "small finger bony mallet" for which surgery was recommended.  *Id.*  Arrangements were therefore made for plaintiff to undergo surgery at SUNY Upstate on July 26, 2002.  AHR at 52.  After preparations were made for the planned surgery, and plaintiff was transported to SUNY Upstate, however, the outside surgeon opted not to perform the surgery, characterizing it as unnecessary.  *See* AHR at

---

[2]        Evidence in the record suggests that the fracture "looks like an old, healed injury."  Plaintiff's Response (Dkt. No. 72) Exh. C, at 6; *see also* Vadlamudi Aff. (Dkt. No. 63) ¶ 28.

4

51, 118, 129, 131; *see also* AHR at 48.

Following the cancellation of his operation, Ozuna visited the prison clinic on several occasions complaining of continuing digital pain and inquiring regarding the possibility of surgical intervention. *See*, *e.g.*, AHR at 48-50. On all or most of those occasions plaintiff was given medication for his pain, either in the form of Motrin, Tylenol or Ibuprofen, as well as tape for his finger. *E.g.*, *id.*

Plaintiff ultimately underwent surgery for his finger at SUNY Upstate on April 30, 2003. AHR at 35, 149-50. In that surgery, plaintiff's pinky finger was opened and exposed, and the bone was aligned and held in place with a pin, resulting in a fused, unbendable straight finger moveable only at the bottom and middle joints. *Id.*; Vadlamudi Aff. (Dkt. No. 63) ¶¶ 29, 33. Following surgery, the affected area of plaintiff's finger was wrapped, and he was given medication for pain.[3] Vadlamudi Aff. (Dkt. No. 63) ¶¶ 33, 36.

II.   PROCEDURAL HISTORY

After exhausting available administrative remedies, plaintiff

---

[3]      Plaintiff apparently developed an infection at the site of the wound, following surgery. Vadlamudi Aff. (Dkt. No. 63) ¶¶ 36, 38. That infection, which was not regarded as unusual, was successfully treated through the use of antibiotics. *Id.*

commenced this action on April 17, 2003, Dkt. No. 1; with leave of court,

*see* Dkt. No. 22, Ozuna later filed an amended complaint on October 19,

2004.  Dkt. No. 23.  As defendants, plaintiff's amended complaint names

Dr. Lester Wright, Associate Commissioner of Health Services for the

DOCS; T. Eagen, the DOCS Director of the Central Office Review

Committee Inmate Grievance Program; K. Bellamy, an assistant with the

DOCS Central Office Review Committee; Gary Green, the former

Superintendent at Marcy; William Lape, the Superintendent at Marcy; and

Dr. Vadlamudi, a prison physician in the Marcy Facility Health Services

Director.  *Id.*  Plaintiff's amended complaint asserts five causes of action,

including 1) violation of the Eighth Amendment, as against all defendants;

2) violation of the Fourteenth Amendment as against defendants Wright

and Eagen; 3) violation of 42 U.S.C. § 1983, as against all defendants; 4)

violation of 42 U.S.C. § 1985, as against all defendants, and 5) a claim of

unspecified origin against defendants Wright and Eagen, based

apparently upon their neglect to properly train and supervise subordinates

and having allowed "unconstitutional policies and customs" to prevail by

their failure to properly supervise DOCS health care workers.

On March 29, 2005, defendants moved for summary judgment

6

dismissing plaintiff's complaint.  Dkt. Nos. 61-68.  In their motion, defendants argue that 1) plaintiff cannot establish either the existence of a serious medical need or defendants' deliberate indifference to that need, and thus plaintiffs' Eighth Amendment claim lacks merit; 2) defendants Bellamy, Eagen, Wright, Green and Lape are entitled to dismissal of plaintiff's claims based upon his failure to establish their personal involvement in the conduct giving rise to the constitutional violations at issue; 3) plaintiff's section 1985 claims lack merit, based upon his failure to establish the existence of a conspiracy; and 4) in any event, they are entitled to qualified immunity.  Plaintiff has opposed defendants' motion in papers filed on May 16, 2005, Dkt. No. 72, and defendants have since replied to those opposition papers.  Dkt. No. 75.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion*

*Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material",

for purposes of this inquiry, if "it might affect the outcome of the suit under

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys*, 426 F.3d at 553 (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.  Though *pro se* plaintiffs are entitled to special latitude when

defending against summary judgment motions, they must establish more

than merely "metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.

1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-

21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se*
plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial
burden of demonstrating that there is no genuine dispute of material fact
to be decided with respect to any essential element of the claim in issue;
the failure to meet this burden warrants denial of the motion. *Anderson*,
477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d
at 83. In the event this initial burden is met, the opposing party must
show, through affidavits or otherwise, that there is a material issue of fact
for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at
2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve
any ambiguities, and draw all inferences from the facts, in a light most
favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright*, 132
F.3d at 137-38. Summary judgment is inappropriate where "review of the
record reveals sufficient evidence for a rational trier of fact to find in the
[non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d
Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S.
Ct. at 2511 (summary judgment is appropriate only when "there can be

but one reasonable conclusion as to the verdict.").

> B.   Defendants' Failure to Respond to Plaintiff's Local Rule 7.1(a)(3) Statement

In their reply, defendants argue that by his failure to respond to their statement pursuant to Northern District of New York Local Rule 7.1(a)(3), plaintiff is deemed to have admitted the contents of that statement.

The consequences of this failure are potentially significant.  By its terms, Local Rule 7.1(a)(3) provides that "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).  Courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts admitted upon an opposing party's failure to properly respond.  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

In this instance plaintiff was placed upon notice by defendants' notice of motion of the requirement that he submit a statement of material facts as to which there is a genuine, triable issue, and that in the absence

of such a statement the facts recited in defendants' Local Rule 7.1(a)(3)

Statement would be deemed admitted.  *See* Notice of Motion for

Summary Judgment (Dkt. No. 61) at 2.  Plaintiff's opposition papers,

however, fail to include such a responsive statement.  Under the

circumstances I therefore recommend that in evaluating defendants'

motion the court consider the material facts set forth in defendants' Local

Rule 7.1(a)(3) Statement as uncontroverted.[4]

### C.   Plaintiff's Deliberate Medical Indifference Claim

At the heart of plaintiff's complaint in this action is his contention that

prison medical officials, including principally Dr. Vadlamudi, were

deliberately indifferent to his serious medical needs in failing to

appropriate treat his fractured pinky fingertip and by delaying in arranging

for surgery to correct that condition.  While plaintiff's claim in this regard

purports to be brought under the Eighth and Fourteenth Amendments as

well as 42 U.S.C. § 1983, independently, it is appropriately addressed

under Eighth Amendment deliberate indifference jurisprudence.  *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985)

---

[4]      As to those facts not contained in the defendants' Local Rule 7.1(a)(3)
statements, I assume for purposes of this motion that plaintiff's version of those facts is
true, as plaintiff is entitled to the benefit of all inferences at this stage.  *Wright v.*
*Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).

("By its terms, of course, [section 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."; citations omitted); *McKenna v. Wright*, No. 01 CIV. 6571, 2002 WL 338375, at *9 (S.D.N.Y. Mar. 4, 2002) (Eighth Amendment applicable to states through Fourteenth Amendment; no separate cause of action when claims are based on same set of facts).  In their motion, defendants' maintain that under established case law in this arena, plaintiff cannot demonstrate either the existence of a serious medical need or their deliberate indifference to that need.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards of decency that mark the progress of a maturing society."[5] *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290 (1976) (citations and internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*).

The Eighth Amendment "'does not mandate comfortable prisons'",

---

[5]     That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

but does not tolerate inhumane ones either; thus the conditions of an inmate's confinement, including medical care, are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).  To succeed on a claim alleging that prison conditions, including but not limited to medical care, violate the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (citations and internal quotations omitted); *see also Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.) (also citing, *inter alia*, *Wilson*).

### 1.    Serious Medical Need

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*,

13

37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'" – since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

As the serious medical need at issue in this case, plaintiff points to the fracture suffered at the tip of his pinky finger.  Such an injury does not constitute the sort of condition of urgency deserving of constitutional protection.  *Henderson v. Doe*, No. 98 CIV. 5011, 1999 WL 378333, at *1-

*2 (S.D.N.Y. June 10, 1999); *Rivera v. Johnson*, No. 95-CV-845, 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996).  Since the record is lacking in evidence which could elevate plaintiff's broken finger to a level of constitutional significance, I recommend a finding that plaintiff's Eighth Amendment claim lacks merit as a matter of law, based upon his failure to establish the existence of a serious medical need.

### 2.    Deliberate Indifference

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.),

*aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992). Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

Assuming *arguendo* that plaintiff is able to establish the existence of a serious medical need, he nonetheless cannot satisfy the second prong of the applicable Eighth Amendment test – deliberate indifference on the part of the defendants to his serious medical need. The record in this case reflects that rather than ignoring plaintiff's condition, prison medical officials addressed his complaints whenever asked to do so by him, providing pain medication, and prescribing exercise and other treatment. Moreover, while plaintiff complains of the cancellation of his scheduled surgery in July of 2002, the record firmly reflects that the decision to cancel the surgery was made by doctors at SUNY Upstate, rather than by DOCS medical personnel at Marcy.

The gist of plaintiff's complaint is his disagreement with the course

16

of treatment followed to treat his finger injury, and the delay in providing

surgical intervention for his condition.  A delay in providing an inmate with

treatment of a serious medical condition can give rise to a finding of a

Eighth Amendment violation when the condition ignored is "life-threatening

and fast-degenerating", or where treatment is withheld over a lengthy

period of time during which the plaintiff complains of extreme pain.  *Sully-

Martinez v. Glover*, No. 00 CIV. 5997, 2001 WL 1491278, at \*5 (S.D.N.Y.

Nov. 26, 2001) (citing*, inter alia*, *Liscio v. Warren*, 901 F.2d 274, 277 (2d

Cir. 1990); *Hathaway,* 841 F.2d 48; and *Archer v. Dutcher*, 733 F.2d 14,

16-17 (2d Cir. 1984)).  In this case, however, no such life-threatening or

fast-deteriorating condition was presented, nor was plaintiff's condition

ignored by prison officials altogether.  Instead, the record reflects that

prison officials at Marcy continued to see Ozuna on a regular basis during

the relevant time period, deciding to follow a more conservative course of

treatment before surgery was ultimately performed in April of 2003.

Based upon these circumstances, no reasonable factfinder could

conclude defendants were deliberately indifferent to plaintiff's medical

need.  *See*, *e.g.*, *Taylor v. Kurtz*, No. 00-CV-700, 2004 WL 2414847, at \*4

(W.D.N.Y. Oct. 28, 2004); *Espinal v. Coughlin*, No. 98 CIV. 2579, 2002

WL 10450, at *3-*5 (S.D.N.Y. Jan. 3, 2002); *Culp v. Koenigsmann*, No. 99

Civ. 9557, 2000 WL 995495, at *9 (S.D.N.Y. July 19, 2000).

> D.   Personal Involvement

\_\_\_\_\_In their motion defendants also challenge plaintiff's claims against

the various defendants other than Dr. Vadlamudi, who was directly

involved in his care and treatment, based upon the lack of their personal

involvement in the acts complained of.  Plaintiff responds by stating that

his claims against those defendants are based upon their awareness of

the circumstances giving rise to his claims, due principally to having

reviewed grievances addressing the alleged inadequacy of the treatment

which he received.  *See* Plaintiff's Response (Dkt. No. 72) ¶ 51.

Personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section 1983.

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of*

*Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

18

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

A careful review of the record in this case, which is comprehensive, fails to reflect any personal involvement in, or even awareness of, plaintiff's circumstances on the part of Dr. Lester Wright, the DOCS Associate Commissioner of Health Services; T.G. Eagen, Director of

Inmate Grievance Program; K. Bellamy, the Assistant Director of the CORC; or William Lape, the Superintendent at Marcy.[6]  Those defendants appear to have been named by the plaintiff based upon their roles as supervisory DOCS employees, plaintiff asserting that through their failure to properly supervise subordinates, they allowed the indifference to his medical condition to occur.  Such allegations are insufficient to implicate personal involvement of a defendant in a deliberate indifference claim. *See Abdush-Shahid v. Coughlin*, 933 F.Supp. 168, 183-84 (N.D.N.Y. 1996) (Koeltl, J.).

Plaintiff's allegations regarding the involvement of former Superintendent Greene are more detailed.  According to the plaintiff, several grievances filed to address the question of the failure to treat his finger were appealed to and reviewed by Superintendent Greene.  *See*, *e.g.*, Plaintiff's Response (Dkt. No. 72) ¶¶ 15, 20, 22, 23.  This allegation suffices to at least raise an issue of material fact regarding defendant Greene's personal involvement in the constitutional violations alleged. *Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *12-*14 (S.D.N.Y.

---

[6]     Defendant Eagen has submitted an affidavit which, while not specifically so stating, implies his lack of personal awareness of plaintiff's circumstances.  *See* Eagen Aff. (Dkt. No. 64).

Apr. 23, 2002).

E.     Plaintiff's Section 1985 Claim

_____In his complaint, plaintiff alleges a conspiracy to deprive him of his

civil rights under section 42 U.S.C. § 1985(3).  That section provides, in

pertinent part, that

> [i]f two or more persons in any State or Territory conspire . . .
> for the purpose of depriving, either directly or indirectly, any
> person or class of persons of the equal protection of the laws,
> or of equal privileges and immunities under the laws . . . the
> party so injured or deprived may have an action for the
> recovery of damages occasioned by such injury or deprivation,
> against any one or more of the conspirators.

42 USCA § 1985(3).  To establish a claim under section 1985(3), a

plaintiff must prove both the existence of a conspiracy and that it was

formed for the purpose of depriving the plaintiff of equal protection of the

law.  *Griffin v. Breckinridge*, 403 U.S. 88, 96-97, 91 S. Ct. 1790, 1795-96

(1971).  As such, the conspiracy must have been motivated by racial or

other class based discriminatory animus.  *Id.* at 101-02, 91 S. Ct. at 1798.

In this instance plaintiff has adduced no evidence to satisfy his

burden of demonstrating that a reasonable factfinder could find both the

existence of a conspiracy and that it was based upon his race and/or

class based animus.  As such, I recommend dismissal of plaintiff's section

1985(3) claim as a matter of law.[7]

IV.   SUMMARY AND RECOMMENDATION

The record now before the court reflects that no reasonable factfinder could conclude the fracture of plaintiff's pinky fingertip, apparently an aggravation of an older injury, constituted a sufficiently serious medical need to trigger Eighth Amendment protection.  The record also discloses that defendants were not deliberately indifferent to plaintiff's condition, and indeed responded to his persistent complaints, though not completely to his liking, by providing pain medication and other relatively conservative treatment prior to surgery, which was ultimately performed. Based upon these circumstances, I recommend a finding that plaintiff's Eighth Amendment deliberate indifference claim lacks merit as a matter of law.

_____In addition to finding that plaintiff's Eighth Amendment claim is lacking in merit, I conclude that the record before the court fails to establish a basis for finding personal liability of the defendants named in

---

[7]        Plaintiff's section 1985(3) cause of action is also potentially barred by the "intracorporate conspiracy" doctrine, which has been applied to preclude such claims "where the conspiratorial conduct challenged is essentially a single act by a single governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity[.]" *See Baines v. Masiello*, 288 F. Supp.2d 376, 394 (W.D.N.Y. 2003).

the case with the exception of Dr. Vadlamudi, who was directly involved in the care and treatment of plaintiff's finger, and former Marcy Superintendent Greene, who heard and decided multiple grievances filed by the plaintiff addressing his condition.  I further find that plaintiff's complaint of unlawful conspiracy to deprive him of his equal civil rights, pursuant to 42 U.S.C. § 1985(3) is lacking merit as a matter of law.[8]

Based upon the foregoing it is hereby

RECOMMENDED, that defendants' motion for summary judgment be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,*

---

[8]      In light of my recommendation on the merits, I have not addressed qualified immunity by determining whether, assuming defendants' actions did violate clearly established law, it was nonetheless objectively reasonable for them to believe that their actions did not violate plaintiff's well-defined rights.  *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001); *Harhay v. Town of Ellington Bd. of Ed.,* 323 F.3d 206, 211 (2d Cir. 2003); *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)).

984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:     February 16, 2006
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\Eighth Amendment\conditions of confinement\medicalindifference\Ozuna.wpd